1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

MAZEN ARAKJI,

          Plaintiff,

    v.

MICROCHIP TECHNOLOGY, INC.,

          Defendant.

Case No.  19-cv-02936-BLF

**ORDER GRANTING DEFENDANT MICROCHIP TECHNOLOGY, INC.'S MOTION FOR SUMMARY JUDGMENT**

[Re:  ECF No. 100]

Before the Court is Defendant Microchip Technology, Inc.'s ("Microchip") motion for summary judgment regarding *pro se* Plaintiff Mazen Arakji's sole remaining claim for discrimination under the Fair Employment and Housing Act ("FEHA").  Mr. Arakji applied for Senior Engineer Position 5244 (the "Senior Engineer Position") with Microchip's Firmware Design Group in 2017.  The manager of the group, Deva Srinivas Yelisetti, conducted a phone interview with Mr. Arakji and had him visit Microchip's Sunnyvale office for a round of in-person interviews. Microchip ultimately declined to offer Mr. Arakji the job.  Mr. Arakji sued for discrimination, alleging that Microchip discriminated against him because he has a disability in his left arm, his ethnicity is Arab, he is from Lebanon, and he is Muslim.  Microchip moves for summary judgment, arguing that Mr. Arakji has failed to make a prima facie case for discrimination and that the evidence shows that Microchip had legitimate, nondiscriminatory reasons for declining to hire Mr. Arakji, including gaps in his employment history and lack of relevant experience.  Mr. Arakji opposes, arguing that there are disputes of fact regarding whether he has made his prima facie case and whether Microchip's articulated reasons for declining to offer him the Senior Engineer Position were legitimate.

Based on the below reasoning, the Court GRANTS Microchip's summary judgment motion.

## I.   BACKGROUND

### A.   Factual Background

Microchip is a corporation that operates in California.  *See* First Amended Complaint ("FAC"), ECF No. 22 at 1.  Mr. Arakji is a California resident who is Muslim and wears a long beard for religious purposes.  *See id.* ¶ 1.  Mr. Arakji alleges that his "national origin is Lebanese, which is an Arab country in the Middle East," where he was born.  *See id.*  Further, Mr. Arakji alleges that he has "Arabic ancestry and ethnic characteristics."  *See id.*  Mr. Arakji also alleges that his first name—Mazen—"is known to be an Arabic name," and his surname—Arakji—"is known to be a [M]uslim surname."  *See id.*  Additionally, Mr. Arakji alleges he has a "very obvious musculoskeletal disability which limits [his] ability to grip and lift heavy objects."  *See id*.  Mr. Arakji unsuccessfully applied for a job at the company Microsemi Corp. ("Microsemi") in 2017.  *See id.* ¶¶ 23–30.  Microsemi's decision not to hire Mr. Arakji is the basis of this lawsuit.  *See id.* ¶¶ 23–37.  Microchip acquired Microsemi in 2018.[1]  *See id.* ¶ 21.

Mr. Arakji alleges that Microchip declined to hire him due to his disability, religion, national origin, and ethnicity.  *See id.*  Mr. Arakji alleges that after a "positive experience" in a phone interview with Deva Srinivas Yelisetti, he was offered an invitation for an on-site interview at Microchip's Sunnyvale office.  *See id.* ¶ 26.  Upon arriving to the interview, Mr. Yelisetti was "told that it had been cancelled" and had to wait several hours before proceeding with the interview.  *See id.* ¶ 27.  Then, after another "positive experience" during his in-person interview, he was informed that his interview had been "voided by HR."  *See id.* ¶ 28.  Following this, Mr. Arakji alleges he applied for multiple other positions and had interviews scheduled, but they were repeatedly cancelled.  *See id.* ¶¶ 29–30.

Microchip provides evidence regarding Mr. Arakji's application process and the process Microchip went through in declining to offer Mr. Arakji the Senior Engineer Position.  The Court outlines that evidence below.

---

[1] While Microchip did not acquire Microsemi until after the events at issue in this case, the Court will use "Microchip" to refer to either company throughout this order.

### 1.   Mr. Yelisetti's Hiring Process

Deva Srinivas Yelisetti was Microchip's Manager of Firmware Design from 2016 to 2018. *See* Declaration of Deva Srinivas Yelisetti ("Yelisetti Decl."), ECF No. 110-3 ¶ 4.   Around April 2017, Microchip approved Mr. Yelisetti's request to recruit and hire someone for the Senior Engineer Position. *See id.* ¶ 10.   Mr. Yelisetti helped prepare and approved a job description for the position that was posted internally and externally to Microchip. *See id.* ¶ 11; Declaration of Mark G. Kisicki ("Kisicki Decl."), Ex. A ("Job Description").   The job description indicated that the Senior Engineer Position would involve "delivering enterprise class non-volatile memory controllers" through "design and implementation of firmware for the latest generation of Flashtec NVMe Controllers." *See* Job Description at 1.   The job description further indicated that job responsibilities would include "using C and assembly language" and "[t]roubleshoot[ing] and resolv[ing] complex software problems in embedded real-time systems." *See id.*   The qualifications for the senior engineer job included the following:

- "5 years or more embedded system development experience (BS/MS degree in Computer Engineering is preferred)." *See id.*
- "Strong C-programming skills and product development experience." *See id.*
- "Strong background in Software methodology and full-cycle development (design, implementation, testing, and debugging)." *See id.*

External applicants applied through the Microchip career website, which required them to upload a resume with their application. *See* Yelisetti Decl. ¶ 11.   In considering applicants for the Senior Engineer Position, Mr. Yelisetti followed the same process he used since becoming Microchip's Manager of Firmware Design. *See id.* ¶ 14.   Mr. Yelisetti personally reviewed each applicant's resume. *See id.*   Then, Mr. Yelisetti conducted a phone screening interview, assessing the applicant's communication skills; checking to see if the applicant was still interested in the position; and asking a series of basic questions regarding firmware design. *See id.*   Screening interviews were intended to "weed out non-serious candidates"—not to assess whether the candidate had the experience and skills for any particular job. *See id.*   Mr. Yelisetti would conduct phone interviews of applicants whose resumes did not make them strong candidates, because hiring

3

qualified engineers was challenging.  *See id.*

Following the phone screening interview, Mr. Yelisetti decided whether a candidate merited further consideration.  *See id.* ¶ 15.  Mr. Yelisetti generally considered 70–80% of applicants he screened by phone to merit further consideration.  *See id.* ¶ 16.  For such candidates, Mr. Yelisetti directed the recruiter to schedule in-person, 45-minute interviews with him; Senior Director of Software Engineering Kowk Kong; two to three engineers; and a human resources representative. *See id.* ¶ 15.  Further, if Mr. Yelisetti was available, he would have the recruiter schedule the candidate for lunch with him.  *See id.*  Following each interview, the interviewer sent an email through a recruiting software system indicating whether or not the company should offer the position to the applicant.  *See id.* ¶ 17.  Mr. Yelisetti did not have access to these responses, but he would talk with each interviewer about their thoughts.  *See id.*  If interview feedback was positive or equivocal, Mr. Yelisetti would have the interviewers meet as a group to discuss their impressions. *See id.*  If the feedback was generally negative, Mr. Yelisetti would not have the interviewers meet as a group.  *See id.*  Mr. Yelisetti has never offered a position to a candidate if any interviewer opposed extending an offer following the group discussion.  *See id.*

Microchip's practice was to post a position for up to 90 days.  *See id.* ¶ 19.  If the position was not filled during that period, Mr. Yelisetti had to obtain approval to re-post the position.  *See id.*

### 2.  Mr. Arakji's Application Process

Mr. Arakji applied for the Senior Engineer Position around April 14, 2017.  *See id.* ¶ 23. Mr. Yelisetti reviewed Mr. Arakji's resume.  *See id.*  He noticed that Mr. Arakji's resume did not identify any specific debugging tools with which he was experienced or licensed.[2]  *See id.* ¶ 24. Further, Mr. Yelisetti noticed that Mr. Arakji's resume indicated that in the previous two years he had been self-employed developing three Android applications using the Java programming

---

[2] Since applying to Microchip, Mr. Arakji has changed his resume.  *See* Yelisetti Decl. ¶ 24; Kisicki Decl., Ex. C.  For example, Mr. Arakji has added a specific debugging tool with which he has experience—JTAG.  *See id.* ¶ 24; *id.*, Ex. C at 4; Declaration of Kwok Kong ("Kong Decl."), ECF No. 100-1 ¶ 11.  Mr. Arakji did not provide this revised resume at any point throughout the interview process with Microchip.  *See* Yelisetti Decl. ¶ 24.

1    language, which the Firmware Design Group did not use.  *See id.* ¶ 25.  Additionally, Mr. Yelisetti

2    noticed that Mr. Arakji's resume indicated a gap in employment from 2013 until 2015 and further

3    self-employment from 2012 until 2013.  *See id.* ¶ 26.  Accordingly, Mr. Yelisetti had reservations

4    about Mr. Arakji's application, but he decided to schedule him for a phone screening interview

5    because Mr. Arakji had sufficient formal education for the position; he had some relevant experience

6    prior to 2012; and Mr. Yelisetti was struggling to fill the senior engineer position due to a limited

7    number of qualified candidates.  *See id.*

8        Mr. Yelisetti asked the third-party contractor handling recruiting logistics for Microchip,

9    Donna Vespe, to schedule an in-person interview with Mr. Arakji at Microchip's office in

10   Sunnyvale, CA.  *See id.* ¶ 28.  Ms. Vespe scheduled Mr. Arakji's interviews starting at 8:00 a.m.

11   with Mr. Yelisetti on May 10, 2017.  *See id.*  Mr. Yelisetti was not available at that time, so he asked

12   Ms. Vespe to change the start time to 9:30 a.m.  *See id.*  Ms. Vespe said she emailed Mr. Arakji with

13   the time change on May 9, 2017, but Mr. Arakji indicates that he did not receive this email.  *See id.*

14   Accordingly, Mr. Arakji arrived at Microchip on May 10, 2017 at 8:00 a.m. and had to wait until

15   9:15 a.m. when Mr. Yelisetti became available.  *See id.*

16       Mr. Yelisetti was the first to interview Mr. Arakji.  *See id.* ¶ 30.  Mr. Yelisetti had Mr. Arakji

17   complete a debugging problem that he has used in evaluating all engineers since 2016, including the

18   applicants for the senior engineer position.  *See id.*  The debugging problem consisted of three

19   issues—each of which had to be solved before the next issue would be revealed, and all three of

20   which had to be solved to successfully solve the problem.  *See id.*  Candidates generally take

21   approximately 20 minutes to solve the problem.  *See id.*  After 20 minutes, if Mr. Yelisetti found

22   that an applicant was making progress, then he gave them an additional few minutes to solve the

23   problem.  *See id.*  But if the applicant was not making progress, Mr. Yelisetti stopped that part of

24   the interview after 20 minutes.  *See id.*  Approximately 30% of the 17 or 18 applicants Mr. Yelisetti

25   interviewed in-person for the senior engineer position were able to solve the debugging problem

26   without guidance.  *See id.* ¶ 32.  After Mr. Yelisetti gave Mr. Arakji the debugging problem, he was

27   not able to make progress on the first issue despite Mr. Yelisetti giving him multiple clues.  *See id.*

28   ¶ 31.  Accordingly, after several minutes, Mr. Arakji ended the debugging part of the interview.  *See*

*id.* Mr. Yelisetti concluded that Mr. Arakji was not qualified for the senior engineer position because of his performance on the debugging problem. *See id.* ¶ 33. During the debugging test, Mr. Yelisetti states that he did not notice Mr. Arakji's disability, and Mr. Arakji did not request an accommodation. *See id.* ¶ 34.

Microchip engineers Frederick Adi and Dody Suratman separately interviewed Mr. Arakji on May 10, 2017. *See id.* ¶ 35. Mr. Yelisetti directed all interviewers to focus on testing Mr. Arakji's debugging and C-programming skills, determining his embedded systems background and experience, assessing his ability to interact with Firmware Design Group, and evaluating the skills listed in the senior engineer job description. *See* Kong Decl. ¶ 9. Mr. Adi and Mr. Suratman presented Mr. Arakji with separate C-programming problems—neither of which Mr. Arakji was able to solve. *See* Yelisetti Decl. ¶ 35. Mr. Adi and Mr. Suratman both told Mr. Yelisetti that Mr. Arakji's C-programming skills were weak and that they did not think Mr. Arakji should be offered the senior engineer position. *See id.* Microchip Senior Director of Software Engineering Kwok Kong also interviewed Mr. Arakji on May 10, 2017. *See id.* ¶ 37. Mr. Kong noticed the same issues with Mr. Arakji's resume that Mr. Yelisetti identified. *See* Kong Decl. ¶¶ 11–13. Further, after interviewing Mr. Arakji, Mr. Kong concluded that Mr. Arakji did not have any meaningful embedded software experience and his recent experience did not involve a relevant programming language or working in teams. *See id.* ¶¶ 15–16. Accordingly, Mr. Kong concluded that Mr. Arakji did not have the "skills and ability" for the senior engineer position. *See id.* ¶ 16.

Since all of Mr. Arakji's interviewers opposed offering him the senior engineer position, Mr. Yelisetti did not gather the interviewers at the end of the day to discuss Mr. Arakji's candidacy. *See* Yelisetti Decl. ¶ 39. Microchip sent Mr. Arakji a message through its career portal indicating that his "background [was] not a match for the requirements set forth in the position," which is language that Microchip typically uses for informing a candidate that it would not be making an employment offer. *See id.* ¶ 40.

Throughout his interviews with Microchip, Mr. Arakji's national origin, religion, and disability were never discussed or mentioned. *See id.* ¶ 29. Further, Mr. Yelisetti and Mr. Kong indicate that they were not aware of Mr. Arakji's religion, national origin, or disability. *See id.* ¶¶

1   42–44; Kong Decl. ¶¶ 19–21.   Mr. Yelisetti and Mr. Kong both indicate that they are non-native

2   English speakers, so Mr. Arakji's name did not indicate anything to them about his national origin

3   or religion.  *See* Yelisetti Decl. ¶ 42; Kong Decl. ¶ 19.

### 3.  Events Following Mr. Yelisetti's Decision Not to Hire Mr. Arakji

5          When the senior engineer position was not filled three months after it had been posted, Mr.

6   Yelisetti got approval to have it re-posted around July 2017.  *See* Yelisetti Decl. ¶ 45.  Microchip

7   did not hire an engineer for the position until October 2017—after more than 20 in-person

8   interviews.  *See id.* ¶ 46.  Microchip hired Raviteja Reddy Levaka for the senior engineer position.

9   *See id*.  Mr. Yelisetti states that Mr. Levaka was superior to Mr. Arakji as a candidate, because Mr.

10  Levaka had been engaged in continuous and directly relevant employment prior to being offered the

11  position and his resume gave detailed information about the debugging tools with which he had

12  meaningful experience.  *See id.* ¶¶ 47–50.   Additionally, Mr. Levaka had been employed

13  continuously for nearly 10 years. *See id.* ¶ 48.  Further, Mr. Levaka solved Mr. Yelisetti's debugging

14  problem in approximately 15 minutes, and all of his interviewers at Microchip supported making

15  him an employment offer.  *See id.* ¶ 51.

### B.    Procedural Background

17         Mr. Arakji filed the operative amended complaint on December 16, 2019 following

18  dismissal with leave to amend of his initial complaint.  *See* FAC; *see also* Order, ECF No. 21.  Mr.

19  Arakji alleged two claims under the FEHA.  First, Mr. Arakji asserted a harassment claim, alleging

20  that after his rejection for the Senior Engineer Position, Microchip repeatedly set him up for

21  interviews for further jobs and cancelled them.  *See* FAC ¶¶ 29–31, 36.  Second, Mr. Arakji asserted

22  a claim for discrimination under the FEHA based on his rejection from the various Microchip

23  positions he had applied for.  *See* FAC ¶¶ 23–28, 32–35.  On April 10, 2020, the Court dismissed

24  both claims without leave to amend.  *See* Order, ECF No. 31.  Mr. Arakji filed a motion for

25  reconsideration on April 14, 2020.  *See* ECF No. 33.  The Court granted it in part—allowing Mr.

26  Arakji to proceed with his discrimination claim as to the Senior Engineer Position, but dismissing

27  (1) his discrimination claim as to any other positions and (2) his harassment claim.  *See* Order,

28  ECF No. 42.

United States District Court
Northern District of California

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Mr. Arakji moved for summary judgment on his remaining discrimination claim on October 19, 2020.  *See* ECF No. 89.  The Court denied Mr. Arakji's motion.  *See* Order, ECF No. 94.  The Court found that Mr. Arakji had established a prima facie case of discrimination.  *See id.* at 5–6.  However, the Court found that Microchip had adduced substantial evidence that Mr. Arakji was not hired for legitimate, non-discriminatory reasons—*i.e.*, "because he lacked the technical skills, experience, or background required" for the Senior Engineer Position.  *See id.* at 6–7.  Since Microchip's evidence regarding Microchip's legitimate, non-discriminatory reasons was enough to raise genuine disputes of material fact regarding Mr. Arakji's discrimination claim, the Court declined to decide on the sufficiency of Mr. Arakji's "modest evidence" that Microchip's reasons were pretextual.  *See id.* at 7.

## II.  LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of informing the Court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559–60 (2006).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

1   reasonable trier of fact could find other than for the moving party.  *Soremekun v. Thrifty Payless,*
2   *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

3       If the moving party meets its initial burden, the burden shifts to the nonmoving party to
4   produce evidence supporting its claims or defenses.  *Nissan Fire*, 210 F.3d at 1103.  If the
5   nonmoving party does not produce evidence to show a genuine issue of material fact, the moving
6   party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  "The court must view the evidence
7   in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's
8   favor."  *City of Pomona*, 750 F.3d at 1049 (citations omitted).  "[T]he 'mere existence of a scintilla
9   of evidence in support of the [nonmovant's] position'" is insufficient to defeat a motion for summary
10  judgment.  *Id.* (quoting *Anderson*, 477 U.S. at 252).  "'Where the record taken as a whole could not
11  lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"
12  *Id.* at 1049–50 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587
13  (1986)).

14  **III.    DISCUSSION**

15      **A.    Request for Judicial Notice**

16      Microchip requests that the Court take judicial notice of (1) Lebanon population statistics
17  from reports on the US State Department's website, Request for Judicial Notice ("RJN"),
18  ECF No. 101 ¶¶ 1–2, and (2) several web articles indicating the popularity of beards in the US, RJN
19  ¶ 3.  Since Mr. Arakji fails to oppose Microchip's request, the Court hereby GRANTS Microchip's
20  request for judicial notice.  *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 n.9
21  (9th Cir. 1987); *Kater v. Church Downs Incorp.*, 886 F.3d 784, 788 n.3 (9th Cir. 2018); *In re*
22  *Facebook, Inc. Sec. Litig.*, 405 F.Supp.3d 809, 827 (N.D. Cal. 2019).

23      **B.    Motion for Summary Judgment**

24      Mr. Arakji's sole remaining claim is that Microchip discriminated against him under the
25  FEHA based on his national origin, ethnicity, religion, or disability status in declining to offer him
26  the Senior Engineer Position.  *See Order*, ECF No. 42.  The parties agree that the applicable burden-
27  shifting framework is provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See*
28  Motion, ECF No. 100 at 13; Opposition, ECF No. 103 ¶ 1.  Under the *McDonnell Douglas*

United States District Court
Northern District of California

framework, Mr. Arakji must first prove a prima facie case of discrimination by showing that (1) he belongs to a protected class; (2) he applied and was qualified for a job for which Microchip was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and Microchip continued to seek applicants from persons of Mr. Arakji's qualifications. *See McDonnell Douglas*, 411 U.S. at 802. If Mr. Arakji meets his burden, then the burden shifts to Microchip "to articulate some legitimate, nondiscriminatory reason" for Mr. Arakji's rejection. *See id.* If Microchip succeeds, then Mr. Arakji must "show that [Microchip's] stated reason for [Mr. Arakji's] rejection was in fact pretext" for discrimination. *See id.* at 804–805.

### 1. Prima Facie Case

Microchip first argues that Mr. Arakji has not established a prima facie case of intentional discrimination, since Mr. Arakji has not proven Microchip's knowledge of his national origin, religion, or disability. *See* Motion, ECF No. 100 at 13–17; *Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003) (plaintiff must prove defendant's knowledge of plaintiff's belonging to a protected class to show intentional discrimination). Microchip argues that Mr. Arakji did not tell any of his interviewers at Microchip about his national origin, religion, or disability. *See* Motion, ECF No. 100 at 14. Further, Microchip argues that knowledge of Mr. Arakji's national origin, religion, or disability cannot be imputed to Microchip because California courts only impute such knowledge when it is the "only reasonable interpretation of the known facts." *See id.* (quoting *Brundage v. Hahn*, 57 Cal.App.4th 228, 237 (1997)). Microchip argues that people wear long beards for non-religious reasons, particularly in 2017 when they were fashionable. *See id.* at 14–16; RJN ¶ 3. Further, Microchip argues that it is mere "conjecture" that Mr. Arakji's first name was known to be of Arabic origin; his surname is known to be a Muslim surname; or that it follows from his national origin—Lebanese—that he is Muslim, given that only a portion of Lebanon's population is Muslim. *See id.* at 15; RJN ¶¶ 1–2. Additionally, Microchip argues that even if any of Mr. Arakji's interviewers noticed his left hand, there is no evidence that the only reasonable interpretation of his left hand was that it limited him in one or more major life activities. *See id.* at 17; Kisicki Decl., Ex. E.

In response, Mr. Arakji argues that Microchip's "only reasonable interpretation of the known

1    facts" standard does not apply.  *See* Opposition, ECF No. 103 ¶¶ 6–9.  Mr. Arakji argues that this

2    standard comes from a case pertaining exclusively to disability discrimination—specifically, as it

3    pertains to a disability that causes a person to fail to perform a task.  *See id.* ¶ 8 (citing *Brundage*,

4    57 Cal.App.4th at 237).  Since the present case involves disability discrimination based on "personal

5    taste (or rather distaste)" for Mr. Arakji's disability, and discrimination based on religion and

6    national origin, Mr. Arakji argues that the "only reasonable interpretation" standard does not apply.

7    *See id.*  Further, Mr. Arakji argues that while a beard may not have been sufficient to impute

8    knowledge to Microchip that Mr. Arakji was a Muslim, a long, non-styled beard like his is sufficient

9    to show knowledge of his religion.  *See id.* ¶¶ 10–16.  Additionally, Mr. Arakji argues that a

10   reasonable juror could conclude that an employer that does not want to hire people from Middle

11   Eastern countries or Muslims would at least perform an internet search for his first name or surname

12   since they are uncommon.  *See id.* ¶¶ 17–19.  Also, Mr. Arakji argues that it is obvious based on the

13   state of his left hand that he is limited in most major life activities, since he is almost always limited

14   to using one hand.  *See id.* ¶¶ 20–24.

15       The Court agrees with Mr. Arakji.  Even if the Court adopts the "only reasonable

16   interpretation" standard advanced by Microchip, a reasonable juror might conclude from the

17   evidence that the only reasonable interpretation of Mr. Arakji's beard, name, or physical condition

18   was that he belonged to an alleged protected class.  For example, Microchip provides an image of

19   Mr. Arakji's left hand that it obtained through discovery.  *See* Kisicki Decl., Ex. E.  The image

20   appears to indicate that Mr. Arakji has an obvious and significant issue with his hand.  *See id.*  A

21   reasonable juror might conclude based on this evidence that the only reasonable interpretation is

22   that Mr. Arakji is limited in major life activities by his hand.  The same could be said of Mr. Arakji's

23   name and long, non-styled beard—a reasonable juror might conclude from this evidence that the

24   only reasonable interpretation is that Mr. Arakji is a Muslim and his ethnicity is Arab.  *See id.*, Exs.

25   D–E; *see also Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) ("very little"

26   evidence is required for establishing prima facie discrimination case).  Microchip offers evidence

27   that beards were in fashion around the time of the events at issue in this case.  *See* RJN ¶ 3.  But Mr.

28   Arakji disputes that his beard was of the type that might be considered a beard he was wearing for

1    fashion or style reasons—he asserts that it was an "non-styled" beard. *See* Opposition, ECF No.

2    103 ¶ 13. Accordingly, the Court finds that there are disputes of material fact regarding intentional

3    discrimination.

4         Outside of its arguments regarding intentional discrimination, Microchip does not dispute

5    that Mr. Arakji has established a prima facie case for discrimination under the FEHA. As the Court

6    stated in its order on Mr. Arakji's summary judgment motion, Mr. Arakji has "met [the] low bar"

7    for establishing a prima facie case for discrimination.[3] *See* Order, ECF No. 94 at 5–6; *Peterson*,

8    358 F.3d at 603. Thus, for purposes of this motion, the Court concludes that Mr. Arakji has raised

9    triable issues of material fact on the issue of whether he can demonstrate a prima facie case of

10   discrimination.

11              ### 2. Nondiscriminatory Reasons for Declining to Hire Mr. Arakji

12        The Court moves onto the next step of the *McDonnell Douglas* framework—determining

13   whether Microchip has adequately articulated a legitimate, nondiscriminatory reason for declining

14   to hire Mr. Arakji. *See McDonnell Douglas*, 411 U.S. at 802. Microchip argues that it has provided

15   evidence that it declined to hire Mr. Arakji because he lacked sufficient skills or experience in C

16   programming, debugging, and embedded software; he had large gaps in his employment history; he

17   could not complete any of the programming or debugging tests provided to him; and none of his

18   interviewers recommended hiring him. *See* Motion, ECF No. 100 at 18–19; *see* Yelisetti Decl.

19   ¶¶ 24–26, 31–33, 35; Kong Decl. ¶¶ 11–13, 15–16. In response, Mr. Arakji only offers his own

20   argument. Mr. Arakji argues that companies like Microchip "do not and cannot have the same

21   power as a University." *See* Opposition, ECF No. 103 ¶¶ 32–35. Further, Mr. Arakji argues that

22   since Microchip did not include a "no [employment] gap" requirement in the senior engineer job

23   posting, the gap in Mr. Arakji's employment history did not constitute a legitimate reason for

24   declining to hire him. *See id.* ¶¶ 36–38.

25        The Court finds that there are no disputes of material fact that Microchip had legitimate,

26

27   ───────────────

28   [3] Even if Mr. Arakji does not cite to any evidence in his Opposition and could therefore be said to fail to meet his burden, the Court assumes *arguendo* that Mr. Arakji has made a prima facie case for discrimination, since it does not change the outcome of Microchip's summary judgment motion.

United States District Court
Northern District of California

nondiscriminatory reasons for declining to hire Mr. Arakji.  Microchip provides substantial evidence of the legitimate, nondiscriminatory reasons it had for declining to hire Mr. Arakji, including gaps in his employment history; lack of directly relevant experience, including with programming languages required for the Senior Engineer Position; lack of experience with specific debugging tools like JTAG; and failure to complete the programming tasks presented to him during his in-person interviews.  *See* Yelisetti Decl. ¶¶ 24–26, 31–33, 35; Kong Decl. ¶¶ 11–13, 15–16; *see also* Kisicki Decl., ECF No. 100-2, Exs. A–B.  Microchip further provides evidence that it eventually hired a candidate for the Senior Engineer Position—Mr. Levaka—whose application did not have the deficiencies identified in Mr. Arakji's application.  *See* Yelisetti Decl. ¶¶ 45–51.  Mr. Levaka did not have unexplained gaps in his employment history (*id.* ¶ 48); his recent employment was directly relevant to the Senior Engineer Position (*id.* ¶ 49); he had experience with specific debugging tools, including JTAG (*id.* ¶ 50); and he was able to complete the debugging exercise Mr. Yelisetti presented to him in approximately 15 minutes (*id.* ¶ 51).  Mr. Arakji provides no evidence in response, deferring to mere attorney argument.  *See* Opposition, ECF No. 103 ¶¶ 26–38.

Further, Mr. Arakji's arguments miss the mark.  The argument regarding Microchip's lack of the power of a university is incomprehensible.  *See* Opposition, ECF No. 103 ¶¶ 32–35.  Further, Mr. Arakji's argument that the job posting lacked an explicit "no [employment] gap" requirement does not raise a genuine issue of material fact as to whether Microchip had legitimate, nondiscriminatory reasons for declining to hire Mr. Arakji.  *See id.* ¶¶ 36–38.  The gaps in Mr. Arakji's resume were only one of several reasons articulated by Microchip and supported by the evidence.  Further, no reasonable juror could conclude based solely on the job posting's lack of a "no gap" requirement that the gaps in Mr. Arakji's employment history were not a legitimate reason for declining to hire him.  It is well known that prospective employers commonly disfavor gaps in a candidate's resume.  Accordingly, the Court finds that Microchip has shown that there are no disputes of material fact that it had legitimate, nondiscriminatory reasons for declining to hire Mr. Arakji for the senior engineer position.

### 3.  Pretext

Since Microchip has met its burden under the *McDonnell Douglas* framework, the burden

1    shifts to Mr. Arakji to show that Microchip's provided reasons were merely a pretext for

2    discriminating against him.  Mr. Arakji can show pretext "(1) indirectly, by showing that the

3    employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or

4    otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely

5    motivated the employer." *Raad v. Fairbanks N. Star Borough School Dist.*, 323 F.3d 1185, 1194

6    (9th Cir. 2003).

7          Mr. Arakji fails to provide any evidence to meet his burden for showing that Microchip's

8    articulated reasons for declining to hire him are merely pretextual.  Mr. Arakji offers no declarations,

9    exhibits, or citations to any evidence—he only offers his own argument in his Opposition.  Even if

10   the Court were to consider the evidence Mr. Arakji provided in support of his pretext argument in

11   his summary judgment motion—his qualifications—Mr. Arakji would fail to meet his burden.  *See*

12   Kisicki Decl., Ex. B.  No reasonable juror could find that Mr. Arakji's qualifications alone show

13   that Microchip's reasons for declining to hire him were pretextual.  *See Schuler v. Chronicle*

14   *Broadcasting Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (plaintiff's "subjective personal

15   judgments" that she "'felt' competent and was 'confident of [her] skills'" insufficient to meet pretext

16   burden on summary judgment); *Dept. of Fair Emp't & Hous. v. Lucent Tech., Inc.*, 642 F.3d 728,

17   746 (9th Cir. 2011) ("[T]he employee must demonstrate such weaknesses, implausibilities,

18   inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

19   its action that a reasonable factfinder could rationally find them unworthy of credence ... and hence

20   infer that the employer did not act for the ... non-discriminatory reasons.") (quoting *Morgan v.*

21   *Regents of the Univ. of Cal.*, 88 Cal.App.4th 52, 75 (2000)).  Microchip provides ample evidence

22   for why Mr. Arakji's qualifications were insufficient—*e.g.*, employment gaps, lack of relevant skills

23   and experience—and aspects of his application outside of his qualifications were inadequate—*e.g.*,

24   his performance on the debugging and programming problems.  *See, e.g.*, Yelisetti Decl. ¶¶ 24–26,

25   31, 35, 37–39.

26         Accordingly, the Court finds that Mr. Arakji has failed to meet his burden under the final

27   step of the *McDonnell Douglas* framework.  With no disputes of material fact that Microchip had

28   legitimate, nondiscriminatory, non-pretextual reasons for declining to hire Mr. Arakji, the Court

United States District Court
Northern District of California

1   finds that Microchip has met its burden for showing that it did not discriminate against Mr. Arakji

2   as a matter of law.  Therefore, the Court GRANTS Microchip's motion for summary judgment.

3   **IV.    ORDER**

4           For the foregoing reasons, IT IS HEREBY ORDERED that Microchip's motion for

5   summary judgment is GRANTED.

6

7   Dated:  May 2, 2022

8                                                          _____

9                                                          BETH LABSON FREEMAN
                                                            United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California